**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ELIDA P. GARCIA,

    Plaintiff,
v.                                          CASE NO. 19-10678

COMMISSIONER OF            DISTRICT JUDGE NANCY G. EDMUNDS
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [11], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12] AND AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Elida P. Garcia appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her claim for a period of disability and disability insurance benefits (DIB). The matter is currently before this Court on cross-motions for summary judgment.[1] (Dkt. nos. 11, 12.)

**A.    Procedural History**

Plaintiff filed an application for a period of disability and DIB originally alleging an onset date for disability as of March 1, 2016, and later amending the onset date to October 1, 2015. (Transcript 103, 223, dkt. no. 8.) Plaintiff's claim was denied at the initial administrative stages. (Tr. 135, 146.) On March 15, 2018, Plaintiff appeared at a hearing before an administrative law judge ("ALJ"), who considered the application for benefits *de novo*. (Tr. 86, 99.) In a decision dated June 29, 2018, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 1,

---

[1]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

2016[2], through the date of the ALJ's decision. (Tr. at 93.) Plaintiff requested Appeals Council review of this decision. (Tr. 1.)

The ALJ's decision became the final decision of the Commissioner on January 22, 2019, when the Appeals Council denied Plaintiff's request for review. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004); (tr. 1-4). On March 6, 2019, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (ECF no. 1.)

**B.    Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide

---

[2] As set forth in the top of the ALJ's decision, at the hearing, the parties amended the alleged onset date to October 1, 2015. (Tr. 86, 103.) This error does not affect the analysis herein.

questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 537 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C. Governing Law

Disability for purposes of DIB is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> At the first step, the Commissioner considers the claimant's work activity and if the claimant is doing substantial gainful activity, the Commissioner will find that the claimant is not disabled.
>
> At the second step, if the claimant does not have a severe impairment or combination of impairments that meets the duration requirement, benefits are denied without further analysis.
>
> At the third step, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> At the fourth step, the Commissioner considers his assessment of claimant's residual functional capacity and past relevant work and if the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> At the fifth step, even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. § 404.1520(a)(4). *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from

4

performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) ("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2019, and had not engaged in substantial gainful activity since October 1, 2015. (Tr. 88.) At step two, the ALJ found that Plaintiff has the following "severe" impairments within the meaning of the Social Security regulations: major dysfunction of the bilateral knees joints, status post bilateral total knee arthroplasty, and disorders of the lumbar spine. (Tr. 89.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) The ALJ found that the Plaintiff had the residual

functional capacity (RFC) to perform work at the light[3] exertional level with the following limitations:

> [O]nly occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; only occasional balancing, stooping, kneeling, crouching, and crawling; and no exposure to extreme cold, vibration, vibrating tools, unprotected heights, and moving mechanical parts. The claimant requires a sit/stand option at will at the workstation. She also requires the use of a cane for prolonged ambulation, and ambulation to and from the workstation.

(Tr. 89-90.)

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work as an administrative clerk (DOT 219.362-010/SVP 4, light/medium as performed). (Tr. 92.) The ALJ found that on the alleged onset date of disability, Plaintiff was 59 years old, defined in the Regulations as an individual "closely approaching advanced age" and "subsequently changed age category to advanced age," has at least a high school education and is able to communicate in English.[4] *See* 20 C.F.R. §§ 404.1563, 404.1564; (Tr. 92.) The ALJ found that Plaintiff had acquired the following work skills from her past relevant work: the ability to answer telephones and direct people in the office. (Tr. 92.)

---

[3]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

[4]The ALJ incorrectly categorized Plaintiff as an individual "closely approaching advanced age." (Tr. 92.) At 59 years of age at alleged onset date, Plaintiff was considered "advanced age (age 55 or older)" under 20 C.F.R. § 404.1563(d) and later changed to the category "closely approaching retirement age (age 60 or older)." 20 C.F.R. § 404.1563(e). Within the context of the ALJ's residual functional capacity finding and the finding of transferable skills, this error is harmless and the resultant conclusion of "not disabled" would remain pursuant to the Medical-Vocational Guidelines Rules. *See e.g.*, 20 C.F.R. § 404.1568; Medical-Vocational Guidelines Rules 201.00(e), (f), 202.00(a), (f); *see also* tr. 124 (VE testimony that her skills would be directly transferable).

At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and therefore she was not suffering from a disability under the Social Security Act from March 1, 2016, though the June 29, 2018 date of the ALJ's decision. (Tr. 92-93.)

### E. Administrative Record

Plaintiff was 59 years old on the alleged onset date. (Tr. 92, 223.) Plaintiff testified at the hearing that she has a GED and she took a computer course in 1997. (Tr. 107-08.) She testified that she had knee replacements and needed another replacement due to a failure of one of the knee replacements. (Tr. 107.) Plaintiff testified that she had been using a cane for about two years. (Tr. 118.)

A review of the record shows that Plaintiff has a history of degenerative joint disease in both knees. (Tr. 320, 326, 390, 394.) She underwent a total left knee arthroplasty on December 22, 2015. (Tr. 326-27.) In her second post-op visit, February 17, 2016, it was noted that Plaintiff was reporting "virtually no pain" in the left knee. (Tr. 323.) Yet by March 2016, Plaintiff was reporting left knee pain. (Tr. 341.) She continued to report pain in the left knee, including in October 2016 when she was further treated for pain, and decreased range of motion and strength in the left knee. (Tr. 449-50.)

On August 30, 2016, just 8 months after the left knee surgery, she underwent a right knee replacement. (Tr. 320-22, 329.) Plaintiff participated in physical therapy following the right knee surgery, and after two months she was "progressing fairly satisfactorily," able to stand from a sitting position and was walking without an aid yet she was "having some difficulty managing stairs"; in October 2016, "gradual" progress was noted, Plaintiff was still reporting right knee pain, and she continued to require "skilled intervention" for decreased

7

range of motion and flexibility. (Tr. 317; 433, 470.) In October 2016, Plaintiff's treating physician Abdulhadi Sinan, M.D., noted Plaintiff's history of low back pain and knee pain, including Plaintiff's report that it was made "temporarily" better with anti-inflammatory medication and muscle relaxants. (Tr. 414.) It was reported that Plaintiff was mildly tender in the knees and lower spine, and the knees were not swollen. (Tr. 415.) She continued with physical therapy focusing on the lower extremities and knees through December 2016. (Tr. 479-550.) In December she was noted to be reporting continuing pain in the left knee, pain with prolonged standing, "difficulty doing laundry, housework, lifting, walking and standing" and unable to walk down stairs due to pain. (Tr. 517, 540.) An August 23, 2017 progress note from Abdullah Omari, M.D., shows that a total right knee replacement was considered because Plaintiff was still struggling with her right knee. (Tr. 576.)

      Plaintiff also has a history of back pain. As far back as 2012, Dr. Sinan ordered an MRI of her lumbar spine. The June 2012 MRI revealed mild lumbar levoscoliosis, with "[o]therwise normal lumbar alignment with intact lumbar vertebral heights," "[m]ild to moderate level lumbar spondylosis and degenerative facet disease" with "[m]ild spinal stenosis at L4-L5 with mild bilateral neural foraminal narrowing" and "[m]ild neural foraminal narrowing" present elsewhere. (Tr. 335.) A 2014 lumbar spine x-ray revealed "[l]umbar spondylosis with multilevel endplate spurring, facet arthrosis and degenerative disc disease L1-L2." (Tr. 395.) A July 2017 x-ray of the lumbar spine showed "disc degeneration facet arthritis of the lumbar spine." (Tr. 581.) An MRI in September 2017 revealed a diffuse disc bulge at L4-L5, with broad based right foraminal protrusion, hyperintense T2 signal abnormality concerning for a small annular tear, and mild disc height loss and dessication with moderate facet hypertrophy, moderate

right and moderate to severe left foramina stenosis, and again, hyperintense T2 signal bodies consistent with an annular tear. (Tr. 582-83.)

A lumbar spine x-ray taken in November of 2017 showed severe disc space loss at L1-L2 and L5-S1, moderate disc space loss at L2-L3, mild disc space loss at L4-L5, and facet hypertrophy from L3-L4 through L5-S1. (Tr. 579.) A November 14, 2017 MRI of the cervical spine was taken to address Plaintiff's complaints of neck pain and left upper extremity radiculopathy. It showed a "[m]ild posterior disc protrusion at C6-C7" and was otherwise unremarkable. (Tr. 577-78.) On November 15, 2017, Plaintiff underwent a neurological consultation with Mohammed Alsaidi, M.D., who recommended bilateral L4-5 facet block, flexion-extension of the lumbar spine, and physical therapy, recommending follow-up in two months. (Tr. 719-25.)

Plaintiff started physical therapy in November 2017 for her bilateral low back pain that reportedly extended into her lower extremities. (Tr. 585.) Aggravating factors were prolonged standing, sitting and walking, and using stairs. (Tr. 585.) She continued to report lumbar pain at her physical therapy sessions. (Tr. 634.) Plaintiff had bilateral L4-L5 facet joint steroid injections on December 5, 2017. (Tr. 643, 647, 731-32.) On December 12, 2017, Plaintiff reported pain at a level of 6/10 at the beginning of the PT session and 4/10 at the end of the session and the physical therapist noted deceased pain and muscle tension following the lumbar injections. (Tr. 647-48.) On December 19, Plaintiff reported pain of 6/10 at the beginning and end of the physical therapy session. (Tr. 657-58.) Despite minimal improvement, by December 21, 2017, she continued to have difficulty with sitting for 15 minutes, causing pain in the left lower extremity, and had no improvement with standing, which resulted in numbness and pain in the left lower extremity. (Tr. 665.) Plaintiff continued

with physical therapy for bilateral lumbar radiculopathy in January 2018, when she reported pain at levels from 4/10 to 7/10. (Tr. 685-86, 695, 700-01, 705-06.) Upon discharge from physical therapy January 17, 2018, it was concluded that Plaintiff "reported minimal improvement from previous re-evaluation but did not overall improvement (sic) from initial evaluation beginning physical therapy" and has "continued pain and numbness" often into the left lower extremity, and reports "continued difficulty with standing, walking, and sleeping" yet slightly decreased cramping in the lower left extremity during the night while sleeping. (Tr. 714; see also 857.) In January 2018, Plaintiff also complained to Dr. Sinan about her neck pain radiating to the left shoulder. (Tr. 857.) At that time she was prescribed and using ibuprofen, tramadol, cyclobenzaprine (for muscle spasms), and methylprednisolone. (Tr. 868.)

Plaintiff had a neurosurgical follow-up with Dr. Alsaidi on January 25, 2018, who noted that she was "status post bilateral L4-L5 facet injection with significant improvement in both her low back and left lower extremity symptoms." (Tr. 734-38.) After the injection she "had about 50% improvement in her low back pain and left lower extremity." (Tr. 734.) The doctor noted that Plaintiff "feels she is benefitting from physical therapy," and he encouraged her to continue to participate. (Tr. 738.) Dr. Alsaidi reviewed the MRI of the lumbar spine and noted that it "reveals some moderate lumbar stenosis with facet arthropathy at L4-L5 with questionable grade 1 spondylolisthesis at L4-5" and the "[e]xtention of lumbar spine reveals grade 1 spondylolisthesis at L4 and L5, no overt instability." (Tr. 738.) He noted of her cervical spine MRI that it "reveals mild degenerative changes without any severe foraminal or central canal stenosis." (Tr. 738.) Physical examination revealed normal tone and full motor strength in all extremities, and nerves and reflexes intact, aside from knee reflexes that were hard to obtain due to the prior surgeries. (Tr. 737.) He noted "mild palpable tenderness around L4-5

10

facet especially with extension." (Tr. 737.) Aside from Plaintiff's back and knees, the record also shows that she had some mild occasional dizziness for which she was taking Antivert. (Tr. 414.) In November 2017, Plaintiff was noted during physical therapy to require "rest breaks after supine to sit transfers for dizziness." (Tr. 629.)

At the hearing, the ALJ asked the vocational expert ("VE") to consider an individual of Plaintiff's age, education and vocational background who is able to perform light work as follows:

> [With] only occasional climbing of ramps and stairs; . . . no climbing of ladders, ropes, and scaffolds. There would be only occasional balancing, stooping, kneeling, crouching, or crawling. No exposure to extreme cold, or vibration, or vibrating tools. No exposure to unprotected heights, or moving mechanical parts, and the individual would require a sit/stand option at will at the work station.

(Tr. 122.) The VE testified that such an individual could perform Plaintiff's past work as an administrative clerk as it was performed, noting based upon the testimony that Plaintiff had access to a headset, which would allow a sit/stand option. (Tr. 122.) The ALJ then asked the VE to consider the same individual, with the additional limitation that the individual would "require the use of a cane for ambulation to and from the work station, and for prolonged ambulation." (Tr. 123.) The VE testified that the individual could not perform Plaintiff's prior work. (Tr. 124.) The ALJ found Plaintiff had past work as an administrative clerk (DOT number 219.362-010, light work/medium as performed, SVP 4, semi-skilled). (Tr. 122.) The VE testified that Plaintiff had skills of answering the telephone and directing people who were entering an establishment, and that these skills are directly transferable to the position of a receptionist (DOT 237.367-038, sedentary, SVP 4, semi-skilled), which would allow the use of a headset. (Tr. 124-25.)

### F. Analysis

Plaintiff contends that the ALJ did not properly assess the treating physician Dr. Abdulhadi Sinan's opinion, and that the record contains new and material evidence that requires remand for further consideration. (Pl.'s Mot. Summ. J. 1, ECF no. 11.)

#### 1. Whether Plaintiff Has Submitted New and Material Evidence Requiring Remand

On June 12, 2018, approximately two weeks before the ALJ issued her decision in this matter, Plaintiff underwent lumbar fusion surgery. (Tr. 49-50.) On August 13, 2018, Plaintiff submitted the surgery records to the appeals counsel with her request for appeal of the ALJ's decision to deny her application for benefits. (Tr. 15-79.) Plaintiff argues that the evidence of surgery is new and "material to the evaluation and assessment of the severity of [her] back pain, symptoms and functional limitations." (Pl.'s Br. 10; tr. 11.)

The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citing *Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have

12

reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where the party seeking remand shows that the new evidence is material.")(emphasis added)(citations omitted). The evidence must also relate "to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970. "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (citing *Sizemore*, 865 F.2d at 712).

The surgery-related information that was submitted to the Appeals Council was not before the ALJ. The surgical record post-dates the ALJ's hearing by approximately three months and was not submitted prior to the ALJ's decision. With respect to showing good cause for failure to provide this evidence, Plaintiff merely states that "[t]here is good cause for the surgical record not being in the record at the time of the hearing [March 15, 2019] (sic) because the surgery took place on June 12, 2018 and the unfavorable decision of the ALJ was issued on June 29, 2018." (Pl.'s Mot. 10, ECF no. 11.) "'[G]ood cause,' . . . is not established solely based on the fact that the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Estrada v. Comm'r of Soc. Sec.*, 2017 WL 4106247, at *5 (E.D. Mich. Aug. 4, 2017) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). In this instance, the evidence was generated prior to the ALJ's decision. Plaintiff's explanation alone, without more, fails to establish good cause. Even if the Court assumes that in the two weeks following her surgery, Plaintiff was unable to notify the ALJ (or her attorney) that the surgery had occurred, she

could have notified prior to surgery that additional information would be forthcoming. *See e.g.*, *Cranfield v. Comm'r.*, 79 Fed. Appx. 852, 859 (6th Cir. Nov. 3, 2003).

The Appeals Council determined that the records did not relate to the period at issue because they were dated June 8 through July 14, 2018, and the ALJ decided the case though June 29, 2018. (Tr. 2.) Some of the evidence related to the June 12, 2018 lumbar surgery relates to the period under consideration by the ALJ, whose decision addresses the time from Plaintiff's amended onset date, October 1, 2015, through the June 29, 2018 date of the decision. (Tr. 86, 93.) Yet even if Plaintiff had shown good cause for failing to provide the lumbar surgery-related records and some or all of the records relate to the period at issue, Plaintiff has not shown that the evidence is material. She has not demonstrated that there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Just days before the surgery, a treatment provider noted that she had "tried physical therapy as well as injection with no permanent improvement" and recommended that she undergo an "L4-S1 posterior transforaminal lumbar interbody decompression and fusion." (Tr. 43-44, nurse practitioner notes dated 6/11/2018 and co-signed by Mohammed H. Alsaidi, M.D.) There is no evidence that this would have supported a different disposition, and indeed nothing more than speculation whether the surgery would leave Plaintiff with permanent improvement where physical therapy and injections had failed to provide permanent improvement, or not. Plaintiff "tolerated the procedure without complications." (Tr. 50.) She was discharged on June 15, 2018, with restrictions of "activity as tolerated" and no lifting, pushing, pulling, or driving. (Tr. 45.) Aside from the post-surgery recovery restrictions, the notes do not indicate long-term restrictions that would conflict with the ALJ's residual functional capacity finding. It was not

until after the period at issue that Plaintiff reported to the emergency department for evaluation of moderate left leg pain with ambulation that she notes started right after the surgery (Tr. 60-61.) Also one month after surgery, it was reported that Plaintiff's complaints of low back pain had mildly improved and her lower left extremity symptoms improved after surgery but were returning over the past two weeks. (Tr. 68.) Plaintiff has not shown that the evidence has a reasonable probability of changing the ALJ's findings regarding the weight given to Dr. Sinan's opinion and assessment of Plaintiff's allegations regarding the severity of her symptoms and limitations. Plaintiff has not met the burden to show that a remand for consideration of this new evidence is warranted. Plaintiff's request for a sentence six remand is denied.

### 2. Whether the ALJ Properly Considered the Treating Physician's Opinion and Explained the Weight Given To It

Plaintiff argues that the ALJ erred giving Dr. Sinan's opinion little weight. The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527 (for claims filed prior to March 27, 2017). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." 20 C.F.R. § 404.1527(a)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must consider the

following factors to determine what weight to give the opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c). "[S]uch opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (quoting *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)). Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources,] on issues reserved to the Commissioner . . . ," i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. *See* 20 C.F.R. § 404.1527(d)(3).

Dr. Sinan completed a residual functional capacity questionnaire dated January 13, 2018, and opined that Plaintiff can lift ten pounds while working, can stand for half-hour before she needs to sit down, can walk one to two blocks before needing a break and can only walk half a mile in an 8-hour work day, can sit only a half-hour before she needs to move around, can work in a seated position for a maximum of one to two hours of an 8-hour workday, and needs to use a cane. (Tr. 681-83.) He noted her diagnoses as low back pain and neck pain with radiculopathy and her symptoms include low back pain with radiation to her left arm and left leg. (Tr. 681.)

The ALJ agrees that Dr. Sinan is a "treating" physician. (Tr. 91.) Yet the ALJ gave "little weight" to Dr. Sinan's opinion and instead "assign[ed] considerable weight" to the earlier

16

opinion of a consultative examiner. (Tr. 91.) Plaintiff underwent a consultative examination with Harold Nims, D.O., on February 8, 2017. (Tr. 422-30.) The consultative examiner noted Plaintiff's history of bilateral total knee replacement, "[c]hronic low back pain with radiation to the left foot of undetermined etiology," chronic mild vertigo, and hypertension, treated medically. (Tr. 425-26.) He noted that her "upper extremities have normal function, strength, and range of motion" while in the lower extremities she has "some motion problems in her knees and some difficulty squatting." (Tr. 425-26.) He concluded that her "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects is mildly impaired . . . ." (Tr. 426.) He also concluded that she could stand for fifteen minutes. (Tr. 427.) He described her back condition as "[c]hronic lower back pain with radiation to the left foot of undetermined etiology." (Tr. 425.) Dr. Nims did not provide an opinion about how much weight Plaintiff could lift, push, pull or carry. (Tr. 422-30.) The ALJ also assigned "considerable weight" to a March 6, 2017 state agency determination signed by Marshall Spencer, M.D., who opined that Plaintiff can occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds. She can stand and/or walk about 6 hours of an 8-hour workday and sit the same. (Tr. 142-46, 143.)

The ALJ properly explained the reason for the weight he assigned to Dr. Sinan's opinion. (Tr. 91.) When asked to identify the "signs, symptoms, and tests" that supported his diagnoses, Dr. Sinan identified only the diagnoses and pain without reference to objective evidence or findings. As Plaintiff points out, Dr. Sinan had access to more recent x-rays and MRIs of the spine than Dr. Nims or Dr. Spencer had referenced or reviewed. (Tr. 140.) Yet Dr. Sinan's notes throughout the record show predominately signs of "tenderness" in the lower spine and lumbar back, without more extreme signs or indications of limitations, and multiple

17

visits with no tenderness noted. (Tr. 91, 786, 797, 804, 816, 832, 850, 859; 824.) As one of her examples, Plaintiff points out that a treatment note from June 2, 2016 indicates her complaints of lower back pain with radiation to the left leg with numbness, noting that she was referred to physical therapy. (Pl.'s Br. 11-12; Tr. 340.) But the notes also indicate that her gate was normal and there was no vertebral tenderness that date. (Tr. 340.) The ALJ's decision to give little weight to Dr. Sinan's opinion is supported by substantial evidence.

### 3. Whether the ALJ Properly Assessed Plaintiff's Complaints of Back And Leg Pain

Finally, Plaintiff argues that her need for lumbar surgery after the hearing supports her allegations about the intensity, persistence and limiting effects of her symptoms. (Pl.'s Br. 10, ECF no. 11.) The Court disagrees, as set forth above. To the extent that Plaintiff challenges the ALJ's finding that "[t]he objective medical evidence only partially supports the claimant's allegation of limitation," the Court will address that herein without considering evidence that was not before the ALJ. (Tr. 90.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," however, her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the medical evidence and other evidence of record." (Tr. 90.) The ALJ did not conclude that Plaintiff had no pain and no limitations. On the contrary she found severe impairments and resultant limitations. Yet she also identified instances throughout the medical record where Plaintiff's pain and limitations were responsive to physical therapy, anti-inflammatory medications, muscle relaxers, and injections. (Tr. 91, *e.g.,* 317, 408, 414, 734.)

To the extent that Plaintiff argues that she needs to use a cane, the ALJ agreed and included the use of a cane for prolonged ambulation and ambulation to and from the work

18

station in the residual functional capacity finding, as well as including a sit/stand option. (Tr. 89-90; Pl.'s Br. 13, ECF no. 13.) The ALJ discussed Plaintiff's testimony regarding activities of daily living including the use of a shower chair and her husband's assistance with tasks in the home. (Tr. 90.) To the extent Plaintiff argues that the "pain and symptoms that required her to undergo lumbar fusion would cause her to be absent greater than one day per month," there is no reference to evidence in the record to support this assertion. Plaintiff mentions in passing that the VE testified that the receptionist occupation would be precluded if the individual were limited to simple, routine tasks due to the side effects of medication or pain that interferes with focus and concentration. (Pl.'s Br. 14.) Again, this assertion remains undeveloped in Plaintiff's brief, without citation to evidence of record. Aside from vertigo, noted by the ALJ, treatment notes do not support allegations of limitations related to medication side effects. (Tr. 90.) In her function report, Plaintiff reported primarily physical side effects to medication and noted no problems paying attention. (Tr. 284, 286.) The reports of dizziness and vertigo were addressed with limitations to no exposure to unprotected heights or moving mechanical parts. The ALJ's findings with respect to the severity of Plaintiff's allegations of symptoms and resultant limitations are supported by substantial evidence.

**G.     Conclusion**

The ALJ's decision to deny benefits was within the range of discretion allowed by law and it is supported by substantial evidence. For the foregoing reasons, Plaintiff's Motion for Summary Judgment (dkt. no. 11) is DENIED, that of Defendant (dkt. no. 12) is GRANTED and, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED.

**SO ORDERED**.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  March 27, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2020, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager